IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NASER TALIGHADI ALRAWAZIQ, §
§
 *Plaintiff,* §
§
vs. § CA 3:99-CV-0970-R
§
CITY OF IRVING and OFFICER §
JAMES FAIRBAIRN §
§
 *Defendant.* §

## MEMORANDUM OPINION AND ORDER

Plaintiff Naser Talighadi Alrawaziq ("Plaintiff") filed suit against Defendants City of Irving ("City") and Officer James Fairbairn ("Fairbairn") on April 29, 1999. Plaintiff raises claims under 42 U.S.C. § 1983 alleging violations of Plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff raises additional state law claims including, assault and battery, negligence and gross negligence, intentional infliction of emotional distress, violations of the Texas Tort Claims Act, and deprivations pursuant to Article I, §§ 9 and 19 of the Texas Constitution. Now before this Court is Defendants' Motion for Summary Judgment (filed March 2, 2000). For the reasons stated below, Defendants' Motion is **GRANTED**.

### I. BACKGROUND FACTS

On May 21, 1997, Plaintiff was indicted in the 282nd Judicial District Court of Dallas County, Texas for "intentionally and knowingly threaten[ing]" Fairbairn on April 29, 1997 with a

MEMORANDUM OPINION AND ORDER -- PAGE 1

"deadly weapon to-wit: an automobile." The indictment further represented that Fairbairn was a City of Irving Police Officer "engaged in the lawful discharge of an official duty" at the time of the offense. On November 19, 1998, Plaintiff pled guilty to aggravated assault "exactly as alleged in the indictment in this cause." Plaintiff was subsequently sentenced to two years imprisonment and a $300 fine.

This case forces the Court to delve into the background surrounding Plaintiff's indictment and subsequent conviction for aggravated assault. The story begins sometime after 6pm on April 29, 1997, when Fairbairn was dispatched to the scene of a major automobile accident on westbound Highway 183 in Irving, Texas just west of Beltline Road. While Fairbairn and a few fellow officers were investigating the accident scene, Fairbairn was told by a passing motorist that a yellow Cadillac which was involved in a separate hit-and-run accident moments earlier was heading toward the accident scene. Fairbairn directed the passing motorist to pull-over and exit his vehicle in order to help Fairbairn identify the yellow Cadillac in question. Traffic was moving very slowly at this point due to the back-up from the original accident scene. Fairbairn and the passing motorist then walked between the two lanes of traffic in order to spot the yellow Cadillac. The victim of the alleged hit-and-run eventually reached the accident scene and pulled over as well.

Shortly thereafter, Fairbairn and the passing motorist spotted the yellow Cadillac. The victim of the hit-and-run confirmed that this was the car involved in the hit-and-run. Fairbairn then stepped in front of the yellow Cadillac and motioned for the driver to pull over to the right shoulder. The driver of the yellow Cadillac failed to pull over, despite Fairbairn's continued motioning. The yellow Cadillac continued to get closer and closer to Fairbairn, forcing Fairbairn to back up. At this point, Fairbairn held out both hands in front of him in order to signal the driver

of the yellow Cadillac to stop. The driver of the yellow Cadillac refused to stop, moving ever closer to Fairbairn.

Fairbairn claims that he saw the hood of the yellow Cadillac rise up slightly as though the care were about to accelerate. Fairbairn also claims that the yellow Cadillac hit Fairbairn's left hand at which point Fairbairn pushed himself off the vehicle and yelled "stop." It was then that Fairbairn drew his weapon. Fairbairn further claims that he attempted to move out of the way of the yellow Cadillac, but the driver of the yellow Cadillac turned the vehicle toward Fairbairn and kept moving closer to Fairbairn. Fairbairn then opened fire on the driver of the yellow Cadillac. Fairbairn first fired four shots at the driver. When the vehicle did not stop, Fairbairn fired approximately seven more shots, at which point the yellow Cadillac stopped. Fairbairn then opened the driver side door, put the car in park and helped the driver out. That driver was Plaintiff.

Plaintiff now argues that Fairbairn used excessive force in stopping Plaintiff. Plaintiff's excessive force claim has two dimensions. First, Plaintiff questions whether Fairbairn was reasonable in using deadly force to stop Plaintiff. Second, Plaintiff argues that Fairbairn was not justified in continuing to fire upon Plaintiff after Fairbairn's initial burst of four shots at Plaintiff. Plaintiff also argues that the City was negligent in the hiring and training of its police officers, including Fairbairn. Plaintiff filed this lawsuit on April 29, 1999. Defendants moved for summary judgment on March 2, 2000. The Court will now explain why the Defendants' motion succeeds.

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when there is no genuine issue as to any material fact and the party moving for summary judgment is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). The court must decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202, 213 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552, 91 L. Ed. 2d at 274 (1986). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325, 106 S.Ct. at 2554, 91 L. Ed. 2d at 275. Once the moving party has satisfied this burden, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file set forth specific facts showing a genuine issue for trial. *See id.* at 324, 106 S. Ct. at 2553,

91 L. Ed. 2d at 274; *Anderson*, 477 U.S. at 256-57, 106 S. Ct. at 2514, 91 L. Ed. 2d at 217. Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.

### B. § 1983 Claims

Section 1983 imposes civil liability upon any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983 (1994). "The first inquiry in any § 1983 suit is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 139 (1979). The deprivation of a right must be caused by the conduct of a person acting under the color of state law. It is undisputed that Fairbairn acted under color of state law when he fired his weapon at Plaintiff while on duty as a police officer with the City.

The only question that remains is whether Plaintiff has been deprived of any right secured by the Constitution and laws of the United States. Plaintiff argues that Fairbairn deprived him of his rights under the Fourth and Fourteenth Amendments of the United States Constitution by allegedly using excessive force against Plaintiff. Plaintiff also argues that the City engaged in the negligent hiring, supervision, and training of its police officers, thereby setting in place a policy, practice, or custom of acquiescing in the use of such force as to jeopardize the constitutional rights of its citizens. The Court will examine each of Plaintiff's arguments in turn.

*Excessive Force – Fairbairn*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Plaintiff's case must necessarily allege a violation of Plaintiff's Fourth Amendment rights because "[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment. . . ." *Id.*

Plaintiff's Fourth Amendment claim must fail as a matter of law. Plaintiff pled guilty and was convicted of aggravated assault for his part in the events surrounding this case. In Texas, assault is defined as, inter alia, "intentionally or knowingly threaten[ing] another with imminent bodily injury. . . ." Tex. Pen. Code § 22.01(a)(2). A person commits aggravated assault under Texas law if the person, "uses or exhibits a deadly weapon during the commission of the assault." Tex. Pen. Code § 22.02(a)(2). Further, a deadly weapon is defined by the Texas Penal Code as "anything that in the manner of its use or intended use is capable of causing serious bodily injury." Tex. Pen. Code § 1.07(17)(B).

"Under Texas law, any person can use force up to and including deadly force 'to protect himself against the other's use or attempted use of deadly force." *Sappington v. Bartee*, 195 F.3d

234, 237 (5th Cir. 1999) (citing Tex. Pen. Code § 22.02(a)(1)). "Further, a peace officer is justified in using deadly force in the course of an arrest if he reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer or another if the arrest is delayed." *Id.* In other words, "an excessive force claim is barred as a matter of law if brought by a person convicted of aggravated assault related to the same events." *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000). Therefore, "the force used by [Fairbairn] . . ., up to and including deadly force, cannot be deemed excessive." *Id.* at 798-99. Based on this line of reasoning, Plaintiff's Fourth Amendment claim must fail, and summary judgment must be **GRANTED** as to this claim.

*Negligent Hiring – City*

Plaintiff's claims against the City also fail as a matter of law. The Supreme Court has "recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997). "Instead, . . . we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* Significantly, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. Plaintiff has made no such showing here. Plaintiff bases his claims against the City upon the mere fact that Fairbairn had previously been subjected to discipline by the Irving Police Department and that the Irving Police Department commenced an investigation into the incident involving Plaintiff by seizing Plaintiff's weapon

and taking photographs of the accident scene. In other words, Plaintiff has pointed to no policy or custom of the City.

In addition, the Court has already concluded that Fairbairn did not use excessive force. Thus, the City could not, as a matter of law, have deprived Plaintiff of any Constitutional rights. For these reasons, summary judgment as to Plaintiff's Fourteenth Amendments claims against the City must be **GRANTED**.[1]

### C. State Common Law Claims

Along with the afore-mentioned constitutional claims, Plaintiff has also alleged a number of common law offenses at Fairbairn's hands, including assault, battery, negligence, gross negligence, and intentional infliction of emotional distress. For the following reasons, Fairbairn prevails on these claims as well.

*Assault & Battery*

The Court has already established that Fairbairn was within his rights to use deadly force against Plaintiff. Because Plaintiff's "state law assault and battery claims against [Fairbairn] are premised on the same basis advanced in support of his constitutional claim, . . ." these claims fail

---

[1] Plaintiff also mentions violations of the Texas Constitution in his pleadings. However, in his Response, Plaintiff stated that he "does not seek remuneration for a direct Texas constitutional tort. Rather, [Plaintiff] seeks remuneration pursuant to the Fourteenth Amendment to the United States Constitution, as Defendant Fairbairn and the City of Irving have deprived him of his state assured rights pursuant to Tex. Const. §§ 9, and 19." Plaintiff has provided no case law for the proposition that either Defendant is liable to Plaintiff under the Texas Constitution. Further, the Court's analysis has revealed that Fairbairn was within his rights as a peace officer to use deadly force against Plaintiff while Plaintiff was in the course of committing an aggravated assault. For these reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims under the Texas Constitution.

to pass summary judgment muster. *Hainze,* 207 F.3d at 799.

*Negligence and Gross Negligence*

"[G]overnment employees involved in discretionary acts are immune from personal liability for erroneous or negligent conduct as long as they act in good faith and within the scope of their employment." *Fowler v. Szostek,* 905 S.W.2d 336, 342 (Tex. App.– Houston [1st Dist.] 1995). There is no dispute that Fairbairn was acting within the scope of his duty or that Fairbairn was performing a discretionary function when he decided to use deadly force against Plaintiff. The question for the Court to determine is whether Fairbairn acted in good faith when he opened fire on Plaintiff. The test of good faith "is one of objective legal reasonableness, without regard to . . . subjective good faith." *Id.* In other words, Plaintiff must show that "no reasonable [police officer] in [Fairbairn's] position could have thought the facts were such that they justified [Fairbairn's] acts." *Id.* Indeed, Plaintiff can make no such showing here. The Court has already established that under Texas law, Fairbairn was entitled to use deadly force in the face of Plaintiff's commission of an aggravated assault. Thus, Fairbairn acted reasonably and in good faith. For these reasons, Plaintiff's negligence and gross negligence claims fail.

*Intentional Infliction of Emotional Distress*

Under Texas law, a plaintiff suing for intentional infliction of emotional distress must prove that (1) defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of defendant caused plaintiff emotional distress, and (4) the resulting emotional distress was severe. *See MacArthur v. University of Texas Health Ctr.,* 45 F.3d 890,

898 (5th Cir. 1995). "Liability under this cause of action is imposed only 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993)). The Court will assume that Fairbairn intended to fire upon Plaintiff. The Court will further assume that Plaintiff suffered emotional distress that can be characterized as severe. However, Plaintiff's case still fails for the simple reason that Fairbairn acted in accordance with Texas law. Therefore, his actions cannot be deemed outrageous or extreme. To hold otherwise would force the Court to rule that Texas law encourages extreme or outrageous conduct by allowing a peace officer to use deadly force in response to aggravated assault. Fairbairn acted reasonably under Texas law in firing his weapon against an aggravated assailant. Thus, Plaintiff's claim for intentional infliction of emotional distress also fails.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

It is so **ORDERED**.

Signed this __10__ day of June 2000.

```
_____
CHIEF JUDGE JERRY BUCHMEYER
UNITED STATES DISTRICT COURT
```